THOMAS F. BETTERLEY v. BRATTLEBORO STREET RAILWAY COM-
PANY AND THE TWIN STATE GAS & ELECTRIC COMPANY.

Special Term at Brattleboro, February, 1916.

Present: ·MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed July 20, 1917.

*Negligence — Contributory Negligence — Trial — Instructions—
Evidence—Damages—Rebuttal.*

A person, driving in a sleigh, who approaches a street railway crossing
is bound to exercise ordinary care with reference to the general
conditions which are known to exist and must necessarily exist
at such a crossing during the sleighing season; but has a right
to proceed upon the assumption that the street railway track is
kept in a reasonably safe condition, and cannot be charged with
negligence in failing to notice a defect therein unless it is so
obvious that it ought to have been seen by one approaching the
crossing with ordinary prudence.

In an action against a street railway company for injuries received by
being thrown from a sleigh, one of the runners of which had
struck against one of the rails of the railway track at a crossing,
*held*, it could not be said as matter of law that plaintiff was negli-
gent in driving upon the crossing at the rate of four or five miles
an hour, or in failing to exercise a closeness of observation that
would have informed him of the undue prominence of the rail.

Requests for instructions examined and *held* properly refused.

In an action against a street railway company for personal injuries it
was error to refuse defendants' request for an instruction, which
called for a specific application of the law of contributory negli-
gence to the case presented by the evidence, the jury having been
instructed only that if plaintiff's negligence contributed to the
accident he could not recover, but having been given no par-
ticular test as to the measure of his conduct, and there having been
no direct and explanatory presentation of the rule of liability in
its relation to the plaintiff.

In an action to recover for personal injuries, where plaintiff's medical
expert testified that plaintiff had partially dislocated his atlas and
axis, and in cross-examination said that one could receive such a

dislocation and live, and where defendant introduced evidence that an injury such as plaintiff claimed would have resulted in death or paralysis, plaintiff was entitled, in rebuttal, to show that one who had received such a dislocation could not only live but be free from paralysis.

CASE FOR NEGLIGENCE. Plea, the general issue. Trial by jury at the September Term, 1915, Windham County, *Fish*, J., presiding. Verdict and judgment for plaintiff. Both parties excepted. The opinion states the case.

At the close of all the evidence, defendants moved for a directed verdict. Motion overruled, subject to defendants' exception.

Defendants' requests for instructions, referred to in the opinion, were as follows:

(2) "A man driving a sleigh along a highway and approaching a street railway crossing, the location of which he knows, is bound to take notice that the crossing is likely to impede his sleigh with a sudden halt or jerk when he strikes it, even though the conditions at the crossing are proper in every way. If a man drives onto such a crossing without giving it a thought, or without exercising any care, and is thrown by reason of the sleigh striking an obstruction which is there by the negligence of the railroad company, yet he cannot recover, if the jury finds his own want of care is likely to have contributed to his having been thrown out.

(3) "It is a matter of common knowledge of which the jury will take note that if a vehicle in which a man is riding strikes an obstruction, the man is more likely to be thrown out if he is not on his guard. It is the duty of a man driving a sleigh in the winter time and approaching a street railroad crossing to be on his guard and drive carefully. If he does not do so, he cannot recover for any injury he may receive by reason of the defect in the track or adjacent highway.

(4) "If the plaintiff was driving down the street at a trot and paid no attention to the crossing of the street railroad, didn't slow up any for it, and knowing it was there and knowing it must be bare and likely to sharply halt his sleigh, he was guilty of contributory negligence and cannot recover.

(5) "If the situation was such as would require a prudent

man to slow up as he approached and went on to the street railroad, and Betterley did not do that, then he cannot recover.

(7) "If a prudent man would naturally slow up the gait of his horse as he approached the tracks as Betterley did, then it was incumbent upon Betterly to slow up, and his failure to do so precludes his recovery in this action, if the jury finds that the gait at which he was going had anything to do with throwing him out of the sleigh.

(8) "If the jury finds that it was careless to drive onto the street railway crossing at a trot, at the rate Betterley says he was going, without paying attention to the crossing or taking any precaution in regard to it, then the plaintiff cannot recover."

*Clark C. Fitts* and *Hermon E. Eddy* for defendants.

Plaintiff was guilty of contributory negligence in driving upon the crossing at a trot and a verdict should have been directed for defendants. *Templeton* v. *Montpelier,* 56 Vt. at p. 331; *Hyde's Admr.* v. *Jamaica,* 27 Vt. at p. 465; *Carter* v. *C. V. R. R. Co.,* 72 Vt. 190; *Maynard* v. *Westfield,* 87 Vt. 532; *O'Brien* v. *City Railway Co.,* 108 N. W. 805; *Wentworth* v. *Waterbury,* 96 Atl. 334; *Perez* v. *Sandrowitz,* 73 N. E. 228; *Petersen, Admr.* v. *Ballantine,* 205 N. Y. 29, 39 L. R. A. (N. S.) 1147.

Defendants' requests expressed the law in its particular application to this case, and should have been complied with. *Whitcomb* v. *Fairlee,* 43 Vt. 675; *N. Y., L. E. & W. R. Co.* v. *Enches,* 4 L. R. A. 433; *Morris* v. *Platt et al.,* 32 Conn. 75; *State* v. *Hopkins,* 56 Vt. 261; *Flinn* v. *St. John,* 51 Vt. 334.

*Herbert G. Barber* and *Frank E. Barber* for plaintiff.

The plaintiff had a right to assume that defendants had performed their duty in keeping the crossing safe and suitable for use. *Union Traction Co.* v. *Barnett,* 67 N. E. 205; *Wiley* v. *Smith,* 45 N. Y. Supp. 934.

Plaintiff was entitled to the admission of the excluded evidence in rebuttal. It was not merely cumulative. It was evidence in denial of an affirmative fact which defendants were endeavoring to prove, *i. e.,* that the injury claimed to have been sustained by plaintiff would produce paralysis or death. Jones on Evidence, § 809; *Marshall* v. *Davies,* 78 N. Y. 414, 420; III

Wigmore on Evidence, § 1873; *Stevens* v. *Dudley*, 56 Vt. 158; *Willard* v. *Norcross*, 81 Vt. 293; *Wilkins' Admr.* v. *Brock*, 81 Vt. 332; *Stillwell* v. *Farwell*, 64 Vt. 286; I Greenleaf on Evidence (16th ed.), § 466a.

MUNSON, C. J. The plaintiff was injured by being thrown from his sleigh while crossing the street railway track in Brattleboro. He has recovered a judgment, and both parties present exceptions. The only exceptions argued by the defendants are to the refusal of the court to direct a verdict in their favor, and to its failure to comply with certain requests for instructions. All their exceptions relate to the question of contributory negligence.

The plaintiff testified that there was good sleighing at this time, not a great deal of snow, a few inches, and that you would naturally go down slightly in passing upon the railway. All that is claimed in the defendants' statement of the case is that the snow made the travelled portion of the highway somewhat higher than the railway crossing. The jury has found by special verdicts that the accident was caused by the sleigh hitting the running rail, and on account of the absence of a proper plank guard along the side of it. There was evidence that the plaintiff had not crossed here before during that winter.

The plaintiff testified that his horse was trotting, jogging along five, six, or seven miles an hour; that he made no difference in the speed on coming to the track; that he took all the care that anybody could; that he didn't see any obstacles, didn't look ahead to see if there were any, and didn't expect any; that he was driving along unconcerned; that he didn't have in mind how the track crossed, or what the effect would be in striking the rail on a curve; and that the fact that he was about to cross a track didn't occur to him. Mrs. Estey, a witness for the plaintiff, testified that as she was coming from an intersecting street she saw the plaintiff coming down towards the railway crossing; that he was driving along at a very slow pace, not more than four or five miles an hour; and that he was thrown out right in front of her as she waited for him to get by.

The defendants insist that the plaintiff's testimony as to the manner in which he approached and came upon the crossing entitled them to a directed verdict. It is evident, however, that the amount of snow in the travelled part of the street, as affecting

the slope to the track, is an element to be considered in passing upon the question of contributory negligence. The plaintiff was bound to exercise ordinary care with reference to the general conditions which are known to exist, and must necessarily exist, at such a crossing during the sleighing season. But he had a right to proceed upon the assumption that the track was kept in a reasonably safe condition, and he cannot be charged with negligence in failing to notice the defect, unless it was so obvious that it ought to have been seen by one approaching the crossing with ordinary prudence. We think it cannot be said as matter of law that the plaintiff was guilty of negligence in driving upon the crossing at the rate of four or five miles an hour, or in failing to exercise a closeness of observation that would have informed him of the undue prominence of the rail.

We think the defendants were not entitled to instructions in the terms of the second and fourth requests. One or two suggestions will indicate our view. A man may drive onto a crossing without giving it a thought, and yet drive onto it in a manner which meets the requirement of the law. If the speed at which the plaintiff came upon the crossing was no greater than ordinary prudence permitted, the fact that the gait of the horse was a trot and that the speed was not lowered would not charge him with negligence. The language of the fifth request might easily be thought to refer to the physical situation alone, and so mislead the jury to the plaintiff's injury. The situation at the crossing as it actually existed was to be considered in connection with the situation which the plaintiff had a right to expect there and what reasonable prudence required of him in such circumstances.

The third, seventh, and eighth requests, like the others, are based upon different features of the plaintiff's testimony descriptive of his driving. The seventh is taken up specially by defendants' counsel as the best illustration of their claim. It reads: "If a prudent man would naturally slow up the gait of his horse as he approached the tracks as Betterley did, then it was incumbent upon Betterley to slow up, and his failure to do so precludes his recovery in this action, if the jury finds that the gait at which he was going had anything to do with throwing him out of the sleigh." The defendants claim that the refusal of the court to comply with any of their requests left the charge without any application of the general rule given the jury as the measure of the plaintiff's duty.

The only general definition of negligence was that given in stating the duty of the defendants. The jury was afterwards told in substance that if the plaintiff was negligent in any degree in anything that contributed to his injury he could not recover; that if he was not without fault as he approached the crossing the defendants were entitled to a verdict. The only statement in the nature of an application of this rule to the facts of the case was made in that part of the charge in which the court submitted certain special inquiries respecting the cause of the accident, and stated the claims of the parties regarding them. It was made with reference to the inquiry whether the accident was caused by the absence of a proper plank guard, and was in these terms: "The defendants say the crossing was in good order, had all the planks and other things that were necessary and proper for the safety of the public, and that the driving of the plaintiff at the time onto the crossing as he did, the crossing being more or less bare, the result was a natural one and the fault was the plaintiff's; he should have halted his horse and driven more slowly upon the crossing, because it is known of all men that you can't drive onto a piece of bare ground with rails on it like this without jolting the sleigh somewhat." The court concluded this presentation by saying: "There is the whole question, in four propositions, for you to determine."

The seventh request contained a sufficiently complete and accurate statement of the plaintiff's duty to entitle the defendants to a compliance with it in terms or in substance. It called for a specific application of the law of the subject to the case presented by the evidence. The jury was told that the plaintiff could not recover unless he was free from fault, but was given no particular test as the measure of his conduct. The reference to the case of a careful and prudent man as the standard in cases of this kind was preceded and followed by comments which directed the attention of the jury to the care exercised by the defendants. There was no direct and explanatory presentation of the rule of liability in its relation to the plaintiff. The frame of the charge in other respects was such as to make this omission material. The court submitted inquiries regarding the existence and effect of certain physical conditions which were claimed to have caused the accident, and referred to these as covering the whole question. Later in the charge the jury were told that if they found that any of these causes produced the injury, and that the de-

fendants were negligent in that particular, it would be their duty to assess damages. The accident might have been caused by any one of the claimed defects, and yet the defendants have been absolved from liability by the conduct of the plaintiff. The failure of the court to comply with the defendants' request for a specific application of the law of negligence to the conduct of the plaintiff, left the jury quite liable to be misled by the subsequent incomplete instructions. The duty imposed upon the plaintiff by the law of the subject was not adequately presented to the jury.

The plaintiff's exceptions relate solely to the question of damages. His evidence tended to show that when thrown from the sleigh he struck upon his right shoulder and head, and received injuries which were serious and permanent. The defendants claimed and their evidence tended to show that the plaintiff's injuries were not serious and permanent. It was not claimed that the plaintiff suffered from paralysis. Dr. Lynch, the physician who first attended him, testified that he thought he had received a partial dislocation of the atlas and axis. On cross-examination, the doctor said that a man who had suffered such a dislocation could live, and that he had read of cases of that kind. The defendants called physicians who testified that if the plaintiff had received such a dislocation it would have resulted in his immediate death or paralysis. The plaintiff called Dr. Lynch in the rebuttal, and asked him if in his judgment that was a fact, and the evidence was excluded as not rebutting. The exclusion was error. Dr. Lynch supported his theory of a partial dislocation by saying on cross-examination that one could receive such a dislocation and live. The defence introduced witnesses who testified in effect that the plaintiff could not have received the dislocation claimed, for if he had it would have resulted in death or paralysis. The plaintiff was entitled to rebut this denial by evidence that one who had received such a dislocation could not only live but be free from paralysis.

The exceptions of both parties are sustained, and the case will go back for a retrial of all questions.

*Judgment reversed and cause remanded.*